Delaware & Hudson Canal Co. v. Mitchell.

*Affirmed.*

113    429
a211s 379

## The Delaware and Hudson Canal Company v. Michael Mitchell.

### Gen. No. 11,224.

1. VERDICT—*when, not set aside.* A verdict must not necessarily be set aside because the testimony of the plaintiff is contradicted by two unimpeached and respectable witnesses.

2. VERDICT—*what essential to set aside.* The Appellate Court will

not set aside a verdict upon a question of fact unless it is clearly and palpably against the weight of the evidence.

3. CUSTOM—*when, irrelevant.* A custom is not relevant where it tends to vary the express terms of a contract.

4. FORMER OPINION—*how far, binds Appellate Court.* The opinion filed by the Appellate Court in one hearing of a cause is binding upon it in a subsequent hearing of the same cause as to everything which was determined in such earlier hearing.

5. MEASURE OF DAMAGES—*where coal is not delivered pursuant to contract.* In such a case a party having the right to call for delivery from time to time need not go into the market and purchase all the coal required at one time but may go into such market and purchase the same from time to time as the demands of his business may require, and so fix the measure of his damages.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1903. Affirmed upon remittitur. Opinion filed March 31, 1904. Remittitur filed and judgment affirmed April 2, 1904.

ULLMANN & HACKER, for appellant.

C. W. GREENFIELD, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellee brought suit against appellant to recover damages for the breach of an alleged contract for the sale and delivery of 2,000 tons of coal, and recovered a judgment therein for the sum of $2,147.22. Appellant brings the case to this court.

It is admitted that in 1895 appellant was a wholesale dealer and appellee was a retail dealer in coal in the city of Chicago. For several years prior to the above date the parties had dealt with each other in a small way. W. S. Bogle was the resident agent of appellant, and one Frank Mitchell was in charge of its South Dock. In the summer of 1895, Frank Mitchell took appellee to Bogle and there a conversation was had concerning the sale and purchase of coal for the season of 1895-6. The prices then made by Bogle were $4.10 for large sized coal, and $4.25 for small sizes, on an order of 2,000 tons if taken before January 1, 1896, and an advance of twenty-five cents per ton for all coal delivered after that date.

The testimony of appellee tends to show that this interview took place in May, 1895; that he then told Bogle his financial standing was not high, when Birkland, the cashier of appellant, said they had looked him up and he was all right; and that nothing definite was concluded at that time; that he again called upon Bogle and told him that he, appellee, was not yet ready to enter into a contract; that in July he went to Bogle's office for the third time, and there saw no one other than Bogle and Frank Mitchell; that he then told Bogle he would take 2,000 tons at the stipulated prices, and Bogle said that was satisfactory. Nothing was stated at any time as to when payment should be made. That after the contract was made Frank Mitchell said: "Now, Mitchell, we have got you, and we will treat you so well that you will never do any business with any one else. You will do all your business with us hereafter."

The evidence of appellant tends to show that the first call of appellee upon Bogle was in the month of July; that the prices named were made in consideration that appellee would buy his entire supply of coal from appellant; that appellee was willing to take one-half only of his supply from appellant for the reason that he owed the Pennsylvania Coal Company $3,500 for coal already delivered; that when this statement was made, Bogle, doubting his financial responsibility, refused to enter into any contract with him; that while Frank Mitchell said in substance that they were glad they had appellee for a customer, and they would treat him so well that they would have all his trade in the future, it was spoken before the question of contract or no contract was determined, and in the belief that a trade for 2,000 tons of coal would be entered into, and that he, Frank Mitchell, was then called out of the room and did not return.

It is admitted that in July, August and September appellee took small amounts of coal from the yards of appellant, and that the coal delivered to appellee in July and August was billed to him at an advance of twenty-five cents per ton over the alleged contract price, and that he

sent his check for the same at the latter price, which appellant received in full of the account. Coal advanced in price October 1, and for the remainder of the year, while the market price fluctuated, it was from sixty-five cents to $1.25 per ton more than the prices which had been named by Bogle.

The first contention of appellant is that the verdict is contrary to the evidence. It is said that the only evidence of the making of a contract is that of appellee, and that on this point he is squarely and positively contradicted by Bogle and Birkland, who, at the time of the trial, were no longer in the employ of appellant; that the burden of proof is upon appellee, and that unless we can say he has sustained the averments of his declaration by a preponderance of the evidence, it is the duty of this court to reverse the judgment. It does not necessarily follow because the testimony of the plaintiff is contradicted by two unimpeached and respectable witnesses, that a verdict for him must be set aside as contrary to or against the weight of the evidence. The jury see and hear the witnesses, and hence are in much better position than is an appellate tribunal to determine the weight and credibility of the evidence. On the motion for a new trial the presiding judge is in duty bound to review the entire trial, and his conclusion is entitled to great weight, for he too saw and heard the witnesses and considered all the circumstances which made for or against the verdict. Nor must it be forgotten that the jury is a constituent and essential part of the court; that in a common law action the right to have them pass upon the facts of the case in the first instance is the inheritance and birthright of every citizen, and we cannot set aside their finding in that regard, unless clearly and palpably against the weight of the evidence. In this case three juries have found the issues for appellee and two trial judges have entered judgments therein. There is nothing shown or urged before us which clearly indicates that another trial would result differently. There must be an end to litigation. There are facts and circumstances in

this case which tended to justify the jury in finding for appellee, and therefore we cannot disturb it upon this ground.

The second contention of appellant is that the trial judge erred in modifying a given instruction tendered by it. This instruction told the jury that if they believed from the evidence " that there was a well known and universal custom in the coal trade at Chicago that made it the duty of the purchaser of coal for his business to begin during the season to take said coal in substantially equal monthly installments," and appellee did not so°do, he cannot recover. The court added, "unless the jury believe from a preponderance of the evidence that there was a specific contract between the parties on the subject, and that such contract, if any, was different from such custom, if any. What the facts are you must determine from the evidence introduced before you in this case." The law is well settled that the alleged custom, if sufficiently proved, will not vary the terms of the express contract which the jury have found existed between these parties. C., C., C. & St. L. Ry. Co. v. Jenkins, 174 Ill. 407. That contract shows that appellee agreed to take 2,000 tons of coal at the prices named, and that appellant accepted such offer. It was further stipulated that appellee had the election to call for the entire 2,000 tons within the first three months after the contract was made. Had the parties intended to embody the alleged custom in the contract, they would have said that only three-sevenths of the coal sold and purchased could be tendered or called for prior to January 1, 1896. The modification of this instruction is not erroneous.

The third contention of appellant is that appellee should have gone into the market October 2, 1895, and contracted for coal to take the place of that which appellant had refused to furnish him, and thus minimize the loss which he now seeks to recover. When this case was before us upon a prior appeal we held that appellee " was entitled to have his damages measured by the market values obtaining at the various times when he required the portions in his sea-

son's business." Delaware & H. C. Co. v. Mitchell, 92 Ill. App. 577, 581. By that decision we are bound. The principle of *res judicata*, the evidence remaining substantially the same, applies to everything that was determined upon the former hearing. Rogers v. Higgins, 57 Ill. 247. It appears that in the fall and early winter of 1895 the coal market was fluctuating, sometimes higher and sometimes lower. The law did not require appellee to assume any risk of additional loss in order possibly to diminish the damages which might come to appellant because of its breach of this contract. We find nothing in this record showing that appellee on October 2, 1895, or shortly thereafter, could reasonably have entered into a contract whereby the damages herein would be lessened.

The evidence shows that there is a small amount due from appellee to appellant for coal delivered to him in September, 1895. He offered to prove this amount in order that the jury might pass upon it. Counsel for appellant objected, saying: "We are not offering any recoupment, and we have no plea of set-off." This objection and statement preclude us from considering such item.

The proven damages of appellee are as follows:

On grate coal purchased prior to Jan. 1st....... $  201 30
On smaller sizes purchased prior to Jan. 1st.....  1,848 11
On coal purchased after Jan. 1st..............     83 75

                                               $2,133 16.
Amount of verdict................$2,147 22
Excess of verdict over damages...... $14 06

If, within ten days from the date of the filing of this opinion, appellee shall remit the sum of $14.06, the judgment of the Circuit Court will be affirmed; should he fail so to do, the cause will be reversed and remanded because of such excess. If affirmed, appellee shall recover all his costs except his costs in this court.

*Affirmed upon remittitur.*

Remittitur filed and judgment affirmed for $2,133.16 April 2, 1904.